UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MORDECHAI HELLMAN<br><br>                              Plaintiff<br><br>         v.<br><br>SHALOM JACOB, LOCKE LORD, LLP,<br>CORTLAND REALTY INVESTMENTS, LLC,<br>BARKANY ASSET RECOVERY &<br>MANAGEMENT, LLC, and DAVID BELSKY.<br><br><br>                              Defendants. | Docket No.<br><br><br><br>**COMPLAINT**<br><br>**JURY DEMANDED** |

Plaintiff MORDECHAI HELLMAN, by his undersigned attorneys, the law firm of GULKO SCHWED LLP, brings this Complaint for civil violations of the Federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1964) "Federal RICO", fraud, breach of fiduciary duty, duty to act in good faith and fair dealing, injunctive relief, unjust enrichment, breach of contract, and for exemplary punitive damages as against defendants SHALOM JACOB, LOCKE LORD, LLP, CORTLAND REALTY INVESTMENTS, LLC, BARKANY ASSET RECOVERY & MANAGEMENT, LLC, and DAVID BELSKY (collectively, "Defendants"), as follows:

### SUMMARY

1. Defendants have retained and continue to retain the sum of approximately $61,458,853.90 recovered on behalf of victims of a Ponzi scheme[1] (the "Original Ponzi scheme"). Defendants were responsible for recovering monies on behalf of the victims and redistributing those

---

[1] Between Jan 2008 and Mar 2013 Gershon Barkany fraudulently solicited millions of dollars in investments from victims. Gershon Barknay was criminally prosecuted, found guilt and sentenced in 2018 to four years in prison.

monies back to the respective victims. Instead, Defendants formed an enterprise to recover and retain the monies and/or negotiate a buy-out of recovery-claims from victims at a reduced valuation rather than returning the funds to the victims of the Original Ponzi scheme.

2. Defendants systemically engaged in a pattern of conduct to either retain funds under the auspices that the victims could not demonstrate their ownership to the recovered monies, and/or manipulated sham buy-out agreements with victims requiring they forfeit their actual claims for pennies on the dollar, and which buy-outs were not paid.

3. The buy-out agreements were knowingly designed to conceal the real reason Defendants had proposed the buy-outs which was to fraudulently induce Plaintiff to execute and convey, among other things, Plaintiff's percentage ownership interest in its full recovery amount from the Original Ponzi scheme and therefore its full claim.

4. Defendants have double-victimized the victims of the Original Ponzi scheme who were first defrauded into investing their monies and were defrauded again by Defendants into forfeiting their rights and/or access to the funds recovered.

5. While some Defendants invested funds in the Original Ponzi scheme, Defendants redistributed those monies back to themselves.

6. Defendants Shalom Jacob, Esq. and the law firm Locke Lord, LLP were involved in both the Original Ponzi scheme (representing and guiding the victims in their investments which would ultimately go towards the Original Ponzi scheme) and the subsequent recovery and ongoing retention of the assets of the victims from that ill-fated Original Ponzi investment.

7. Defendants further used Plaintiff's resources, knowledge, information, evidence, and claim as leverage to obtain recovery of funds on other claims from the Original Ponzi scheme.

8. Plaintiff is a victim of the Original Ponzi scheme whose funds in the amount of $1,375,000 have been recovered, and are retained by Defendants.

## VENUE AND JURISDICTION

9.  This Court has original subject matter-matter jurisdiction pursuant to 18 U.S.C. § 1964(c), and 28 U.S.C. §1331 because this action arises, in part, under the Federal RICO act.

10. This Court has jurisdiction over Plaintiff's related state and common law claims pursuant to 28 U.S.C. § 1367.

11. This Court has personal jurisdiction over the Defendants pursuant to New York Civil Practice Law and Rules §§ 301, 302, and 303.

12.  Venue is proper pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b).

## THE PARTIES

13. Plaintiff Mordechai Hellman ("Plaintiff") is a resident of the State of New York.

14. Defendant Shalom Jacob, Esq. ("Jacob") is an individual who is a domiciliary and resident of the State of New York. Jacob represented and guided victims with their investments in the Original Ponzi scheme, and subsequently to recover and administer assets and property recovered.

15. Defendant Locke Lord LLP ("Locke Law Firm") is a law firm that maintains an office at 200 Vesey Street, 20th Floor, New York, New York 10281- 2101.Its address for purposes of service of process is listed on the website for the Secretary State of New York as 28 Liberty Street, New York, New York 10005 C/o CT Corporation System. Locke Law Firm represented and guided victims with their investments in the Original Ponzi scheme, and subsequently to recover and administer assets and property recovered.

16. Defendant Barkany Asset Recovery & Management, LLC ("BARM") is a limited liability company organized under the laws of the State of New York, whose registered agent is Locke

Law Firm, located at 3 World Financial Center, New York, New York 10281-2101. BARM was formed by Locke Law Firm to recover and administer the victims' assets. BARM is also represented by Jacob and Locke Law Firm.

17. Defendant David Belsky ("Belsky"), is an individual domiciled in the State of New York and maintains an address 21 West 47th Street, New York, New York 10036-2825. Belsky was established as the sole member of BARM.

18. Defendant Cortland Realty Investments, LLC ("Cortland") is a limited liability company organized under the laws of the State of Delaware with an address for service of process at 160 Greentree Drive Ste 101, Dover Delaware. Cortland was formed by Locke Law Firm and claims the largest financial stake in the recovery from the Original Ponzi scheme.

## FACTUAL BACKGROUND

19. Defendants Jacob, Locke Law Firm, and Belsky represented and guided victims, including Plaintiff, to invest their assets into certain investments that were subsequently discovered to be part of the Original Ponzi scheme. At all times, Plaintiff believed and was led to believe he was represented by Jacob and Locke Law Firm.

20. During this period, Jacob and Locke Law Firm obtained approximately $1.4M on behalf of Plaintiff that was invested in the Original Ponzi scheme.

21. Jacob and Locke Law Firm lead the formation of a committee (the "Committee") that spearheaded certain collection efforts on behalf of the victims (and their constituents), including Plaintiff and his own personal investors - all of whom were victims of the Original Ponzi scheme.

4

22. Specifically, on or about December 21, 2010, Jacob entered into an agreement (the "December Agreement") with the victims, including Plaintiff, regarding the recovery and distribution of assets recovered on behalf of the victims.

23. The December Agreement provided that Plaintiff's claim was $1,375.000 (the "Liability Amount") consisting of funds collected and invested by Plaintiff.

24. Thereafter, Belsky, Jacob and the Locke Law Firm formed BARM on behalf of the victims allegedly with its express purpose to collect and distribute all assets and property recovered on behalf of the victims of the Original Ponzi scheme back to those victims.  However, the enterprise was used and formed to as part of the scheme to transfer the victims' claims and ownership interests for the benefit of Defendants. BARM is a client of Jacob and Locke Law Firm.

25. Belsky was established as the sole member of BARM.  Belsky is a client of Locke Law Firm.

26. Cortland was identified as a group of victims with the largest financial stake in the Original Ponzi scheme.  Cortland is a client of Jacob and Locke Law Firm.

27. Notwithstanding the myriad of ethical and legal conflicts with Jacob and Locke Law Firm's representation of all parties, as well as the brazen and blatant unlawfulness of their acts and enterprise, Locke Law Firm and Jacob furthered their scheme to retain assets recovered from the Original Ponzi scheme from Plaintiff.

**VICTIMS FUNDS RECOVERED AND RETAINED BY DEFENDANTS**

28. BARM through the information, claims and cooperation of victims collected and recovered a total of approximately $22,893,674.10, as well as additional non-monetary assets including securities, personal property, and real property from the Original Ponzi scheme and/or affiliates of that scheme.

29. Such collections came from various sources of the Original Ponzi scheme and its perpetrators including, but not limited to, (a) liquidation of the Original Ponzi scheme bank and/or investment accounts, (b) tax refunds, (c) repayment of loans made to third parties, (d) sale of real estate to entities owned, (e) sale of personal property including automobiles, (f) payments from third parties, and (g) prosecution and settlement of claims against third parties including fraudulent transfer claims.

30. In addition, and due as a result of the efforts of the victims of the Original Ponzi scheme, the perpetrator of the Original Ponzi scheme admitted via sworn affidavit that:

   a. [he] repeatedly engaged in fraudulent and unauthorized practices and conveyances which victimized the [victims]. [He] employed a variety of means in this fraud, including the solicitation of funds for real estate and loan transactions which, unbeknownst to [the BARM Members], were not as represented or altogether non-existent.

   b. In each case, the [victims] provided funds for specific purposes and required repayment within a fixed and agreed period of time. . . .

   c. The loans and real estate transactions were generally shams, fabricated by [him] to serve as a vehicle to separate [victims] from their money.

   d. While some of the earlier transactions did produce returns, when the transactions did not do so, [he] would resort to reporting fictitious or falsely inflated returns, making some payments and, on certain occasions, trying to get the creditors to roll over payments into new transactions. In reality, their money had been used to pay off other creditors or was otherwise misappropriated by [him] . . . .

31. On March 25, 2013, the victims of the Original Ponzi scheme through BARM (allegedly acting on their behalf and using their claims, evidence and information) recorded a judgment against the Original Ponzi scheme and a number of entities controlled or owned in whole or part by its perpetrator in the amount of $66,609,424.74 (the "Judgment"), plus post-judgment interest, which was entered by the Supreme Court of the State of New York, County of Queens

in the case captioned as *Cortland Realty Investments LLC, et al. v. Barkany, et al.*, Index No. 5619/2013.

## DEFENDANTS RETAINED PLAINTIFF'S FUNDS WHOSE CLAIM THEY USED AS LEVERAGE TO RECOVERY ASSETS FROM THE ORIGINAL PONZI SCHEME

32. Defendants were at all times aware and knowledgeable of Plaintiff's claim and that the monies invested by Plaintiff consisted of funds collected by Plaintiff and not just from Plaintiff's personal assets and that the Committee represented liabilities of other third-parties as part of the amount associated with Plaintiff's respective liability.

33. Plaintiff made the foregoing arrangement clear to Belsky and Jacob prior to engaging them. Plaintiff relied on their assurances that he would be able to collect the nearly $1.4M invested in the Original Ponzi scheme.

34. In fact, Belsky was knowledgeable of Plaintiff's investment structure, as Plaintiff sent him an email dated May 26, 2011 identified Plaintiff's individual investors by name and invest amount.

35. Belsky agreed with Plaintiff's claim amounts and "Book 1" numbers.

36. Moreover, over the course of several years, Belsky, together with the other Defendants, took numerous actions to recover Plaintiff's assets expressly on behalf of Plaintiff and those victims that invested with Plaintiff in the Original Ponzi scheme.[2]

---

[2] BARM and/or its members commenced at least eight (8) actions seeking the return of alleged fraudulent transfers and/or payments on loans from the Original Ponzi scheme. See, *BARM v. Ksav Sofer Research Institute*, Case No. 705676/2014, Supreme Court of the State of New York, County of Queens; *BARM v. Marina District Dev. Co., LLC*, Case No. 14-2602 (RJD) (JO), United States District Court for the Eastern District of New York; *BARM v. Rosenberg, et al.*, Index No. 650714/2014, Supreme Court of the State of New York, County of New York; *BARM v. Kessler & CCL, Inc.*, Index No. 154149/2014, Supreme Court of the State of New York, County of New York ; *BARM v. Yeshiva Darchai Torah, et al.*, Case No. 16-00872 (JGK), United States District Court for the Southern District of New York; *BARM v. Bloom, et al.*, CaseNo. 15-9098 (ER), United States District Court for the Southern District of New York ; *BARM, et al. v. Sommer*, Jerusalem Magistrate Court, Israel; and *Gerald Pinsky, et al. v. Charles Berger,The Charber Group LLC*, Index No. 600788-2012, Supreme Court of the State of New York, County of Nassau.

37. Defendants used Plaintiff's position and the aggregate of liabilities between Plaintiff and Plaintiff's investors to recover monies on behalf Plaintiff and generally, as part of their broader and more expansive objective to recover assets allegedly on behalf of the victims of the Original Ponzi scheme.

38. Once Defendants recovered funds, Defendants intended to and actually retained, converted and/or failed to distribute the monies back to the Plaintiff and the other victims.

39. However, it was only after much back and forth between Plaintiff and Belsky, as well as Jacob, that Plaintiff recently learned that Defendants, and specifically Belsky and Jacob disputed or controverted the amount claimed by Plaintiff to be due and owing to him.

40. Defendants have failed to release any of Plaintiff's monies back to Plaintiff.

### RECENT EVENTS AND DEFENDANTS' ONGOING ILLEGAL CONDUCT

41. On or about August 31, 2017, Defendants notified Plaintiff that allegedly due to certain adverse proceedings brought against BARM in bankruptcy court, Defendants sought to make interim distributions or as an alternative, proposed an alternative option: a buy-out by their current client and then current BARM member, Cortland.

42. The buy-out agreement ("Buy-Out Agreement"), prepared by Defendants on behalf of Cortland, listed Plaintiff's Liability Amount as $697,801.62 with interest at 1.384% and provided a buy-out amount of $290,561.00 as the total offer for Plaintiff's $1,375,000 claim. A copy of the Buy-Out Agreement is annexed hereto as Exhibit 1.

43. Belsky and Jacob misrepresented that due to the bankruptcy proceedings, the victims, including Plaintiff, were at risk and exposed to potential real losses because the monies recovered from the Original Ponzi scheme were allegedly part of unlawful and/or fraudulent transfer, which may require BARM to reimburse such monies.

44. Belsky and Jacob counseled Plaintiff to accept the Buy-Out Agreement albeit a fraction of the actual amount that Plaintiff was entitled to receive which amount was in Defendants' possession and control.

45. Although Defendants Jacob and Locke Lord were attorneys to Plaintiff, they each counseled Plaintiff at every step prior to and since the Original Ponzi scheme, and counseled Plaintiff to accept the Buy-Out Agreement, Defendants Jacob and Locke and Lord arranged for the law firm of Heller Horowitz & Feit, P.C to finalize the buy-out.

46. Defendants Jacob and Locke and Lord conspired with others, including Belsky to profit off Plaintiff by depriving him of the interests that he paid Belsky, Jacob, and Locke and Lord to recoup.

47. Between the significant legal fees and professional fees paid to Belsky, Jacob and Locke Lord, together with the recouped interests that were diverted from Plaintiff, Defendants have been - - at best – significantly unjustly enriched from their conspiratorial efforts.

48. Plaintiff, not knowing that Defendants had developed this furtive scheme to effectively secure Plaintiff's position for pennies on the dollar because of the reliance upon the advice of Defendants based upon their role as trusted counsel, agreed to accept the proposed buy-out by Cortland.

49. Notwithstanding the foregoing, Defendants have refused to pay Plaintiff the monies owed to him, neither the actual amount recovered from the Original Ponzi scheme or the amount pursuant to the sham Buy-Out Agreement.

50. Moreover, in addition to the blatant breaches and damages that resulted from the foregoing acts of Defendants, incredulously, Belsky and Jacob have recently each made clear that their position is that Plaintiff is not entitled to any monies.

51. Defendants' have profited off Plaintiff's position and used Plaintiff's claims to pursue and recover funds on behalf of victims of the Original Ponzi scheme. Defendants have represented that and acted on behalf of Plaintiff at all times relevant herein and throughout the course of the related proceedings.

52. Defendants acted fraudulently and led Plaintiff to believe – both by written and verbal statements and their course of conduct, that they were acting on Plaintiff's behalf and in his best interest.

53. However, once Defendants connived Plaintiff into representing him and that they would act on his behalf and behalf of his individual investors, they then skirted their obligations to make any payments to Plaintiff, even though monies were recovered on his behalf.

54. Defendants continue to operate this unlawful scheme and have withheld making any payment or releasing documents to Plaintiff.

## COUNT I

### Federal RICO 18 U.S.C. § 1964(c)

- **All Defendants-**

55. Plaintiff incorporates by reference and realleges paragraphs 1 through 54 set forth above.

56. Plaintiff alleges that Defendants' conduct, and the conduct of each Defendant named herein, constitutes racketeering as set forth in 18 U.S.C. § 1964(c). Specifically, Congress has defined "racketeering" to include wire fraud, or committing fraud by means of electronic transmissions over wire. Defendants herein engaged in multiple instances of wire fraud.

57. As detailed below, Plaintiff alleges three different causes of action for Federal RICO violations. § 1962(c) provides relief against parties who in engage in a pattern of racketeering activity; § 1962(a) provides relief against parties who use funds generated through a pattern of

racketeering activity; § 1962(d) provides relief against those who conspire to violate the racketeering laws. Defendants are liable under each of these statues.

58. 18 U.S.C. § 1964(c) allows "any person injured in his business or property by reason of a violation of section 1962 of this chapter" to "sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee []".

## COUNT II

### Violation of 18 U.S.C. §1962(c)

- **All Defendants -**

59. Plaintiff incorporates by reference and realleges paragraphs 1 through 58 set forth above. 18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity []" 18 U.S.C. § 1962(c).

60. Each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding, and does hold, "a legal or beneficial interest in property."

61. Defendants' activities include at least two acts of racketeering activity since 2017. Accordingly, Defendants' conduct constitutes a "pattern" of racketeering activity. 18 U.S.C. § 1961(5).

62. Defendants under the auspices of recouping funds on behalf of victims of the Original Ponzi scheme sought to utilize Plaintiff's resources, information, and claim to access and obtain millions of dollars. Defendants retained these funds without distributing them to the victims.

63. A second such act took place, whereby Defendants misled Plaintiff into believing that the bankruptcy court and /or proceedings would require Plaintiff to return any monies recovered, guided and directed Plaintiff into entering a Buy-Out Agreement, which was knowingly and specifically designed to conceal the real reason Cortland had proposed the Buy-Out Agreement - to fraudulently induce Plaintiff to execute and convey, among other things, Plaintiff's percentage ownership interest in BARM.

64. Other such acts are described herein, including the filing of multiple lawsuits purportedly to recover funds on behalf of victims of the Original Ponzi scheme.  All of these acts were continuous and ongoing.

65. At all times relevant hereto, each Defendant conducted and participated in the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

66.  Defendants formed an association-in-fact enterprise ("Enterprise"), described herein, within the meaning of 18 U.S.C. § 1961(4).

67. The Enterprise consists of a group of "persons" associated together for the common purpose of intentionally and willfully defrauding Plaintiff and other victims of the Original Ponzi scheme into believing that funds would be recovered and redistributed to the victims.

68. The Enterprise is ongoing and was created as a tool to effectuate Defendants' pattern of racketeering activity.

69. Defendants established the Buy-Out Agreement which was knowingly and intentionally designed to fraudulently induce Plaintiff to execute and convey Plaintiff's claim thereby allowing Defendants to retain all assets recouped on behalf of the victims of the Original Ponzi scheme.

70. All Defendants agreed to and did conduct and participate in the conduct of the Enterprise's

affairs through a pattern of racketeering activity including wire fraud as defined by 18 U.S.C. § 1343, and for the unlawful purpose of intentionally defrauding Plaintiff

71. . The wire fraud committed by Defendants is based on a scheme developed and carried out by the Enterprise wherein Defendant fraudulently electronically filed petitions on behalf of Plaintiff and other victims and recuperated funds (using interstate wires) and then continued to recoup and retain victim's monies without any intent to distribute those assets to anyone other than Defendants.

72. Defendants in fact misled Plaintiff, by *interalia* advising and directing Plaintiff to enter into a Buy-Out Agreement whereby the monies recouped on behalf of Plaintiff would be retained by Defendants.

73. At all times discussed herein, Defendants have been involved in a plan to scheme or defraud; have had the intent to defraud and have willfully participated in the scheme to defraud with actual knowledge of its fraudulent nature and with specific intent to defraud; and could have reasonably foreseen that interstate wires would be used; and actually used interstate wires to further Defendants' scheme.

74. As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $1,375,000, said damages to be proven at the time of trial.

75. Because of Defendants' violations of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

## COUNT III
### Violation of 18 U.S.C. § 1962(a)

-   **All Defendants -**

76. Plaintiff incorporates by reference and realleges paragraphs 1 through 75 set forth above.

77. 18 U.S.C. § 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).

78. As alleged hereinabove, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3). 236.

79. As alleged in the preceding sections, Defendants' conduct constitutes a "pattern" of racketeering activity. 18 U.S.C. § 1961(5).

80. At all times relevant hereto, beginning on or around 2017 and continuing, Defendants received income derived from a pattern of racketeering activity to use or invest a part of such income or the proceeds of such income in the establishment and operation of an enterprise that is engaged in, or the activities of which affect, interstate or foreign commerce, in violation of 18 U.S.C. § 1962(a). 238.

81. As alleged in the preceding sections, Defendants formed the Enterprise to effectuate Defendants' pattern of racketeering activity.

82. All Defendants agreed to and did use income received directly from a pattern of racketeering activity to control, establish and operate the Enterprise, which was engaged in and affected interstate commerce, including wire fraud as defined by 18 U.S.C. § 1343, and for the unlawful purpose of intentionally defrauding Plaintiff.

83. The wire fraud committed by Defendants is set forth in the preceding sections and is incorporated by reference herein.

84. As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $1,375,000, said damages to be proven at the time of trial.

85. Because of Defendants' violations of 18 U.S.C. § 1962(a), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

## COUNT IV

### Violation of 18 U.S.C. § 1962(d)

### -All Defendants-

86. Plaintiff incorporates by reference and realleges paragraphs 1 through 85 set forth above.

87. 18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

88. As alleged ¶¶ 52 and 69 of the preceding sections, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

89.  At all relevant times, the Defendants and each Defendant agreed to and did conspire to violate 18 U.S.C. §§ 1962 (a) and (c), as alleged above and incorporated herein, in violation of 18 U.S.C. § 1962(d).

90. The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the enterprise described above; and to receive income derived from a pattern of racketeering activity and to use such income or the proceeds of such income in the establishment and operation of that enterprise

91. Defendants have knowingly, willfully and intentionally conspired and agreed to conduct and

participate in the conduct of the affairs of the enterprise described previously through a pattern of racketeering activity (wire fraud).

92. Defendants have knowingly, willfully and intentionally conspired and agreed to receive funds derived from a pattern of racketeering activity (wire fraud) and to use such monies or the proceeds of such income in the establishment and operation of the enterprise described previously.

93. Defendants knew that their actions as alleged above were part of a pattern of racketeering activity and agreed to the commission of those acts to further the conspiratorial scheme described above.

94. Defendants directed and advised Plaintiff to enter into the Buy-Out Agreement under the false predication of exposure and potential necessity to return funds recouped from the Original Ponzi Scheme allegedly pursuant to bankruptcy proceeding.

95. Defendants benefited from the Buy-Out Agreements acquiring Plaintiff's shares in BARM and the funds recouped on behalf of the victims of the Original Ponzi scheme, which funds were in Defendants' possession and control under the pretext of recovering and distributing the assets back to the victims, including Plaintiff.

96. Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(c) and (a), in violation of 18 U.S.C. § 1962(d).

97. As a direct and proximate consequence of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $1,375,000, said damages to be proven at the time of trial.

98. Because of Defendants' violations of 18 U.S.C. § 1962(d), Defendants are liable to Plaintiff

for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

## COUNT V

### Fraud

### -Against Cortland-

99. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 98 above as if fully set forth herein.

100. As more fully set forth above, Cortland and Defendants fraudulently conveyed from Plaintiff and fraudulently induced Plaintiffs out of, among other things: their percentage ownership interests in BARM and Plaintiffs' repayment of $1,375,000.

101. To induce Plaintiff to convey his interests in BARM, on August 31, 2017, Cortland, proposed a false Buy-Out Agreement, which Defendants Jacob and Locke Law Firm supported by directing and advising Plaintiff to enter into. Cortland never intended to tender to Plaintiff the purchase price due thereunder.

102. The Buy-Out Agreement was represented to Plaintiff as necessary allegedly due to the bankruptcy court and/or proceedings which would require Plaintiff to potentially return any monies recovered. Defendants guided and directed Plaintiff into entering into a Buy-Out Agreement.

103. The Buy-Out Agreement was intentionally and knowingly designed to conceal the real reason Cortland had proposed any such agreement which was to fraudulently induce Plaintiff to execute and convey, among other things, his percentage ownership interest in BARM.

104. As set forth more fully above, based on Cortland's proposed Buy-Out Agreement, made through Defendants, who served as counsel to Plaintiff having directed, guided and advised Plaintiff prior to and since the Original Ponzi scheme.

105.   Plaintiff reasonably relied upon Defendants guidance and direction to his detriment, Plaintiff, among other things, was fraudulently induced out of and fraudulently conveyed, among other things, his ownership interests in BARM.

106.   Cortland's representations, statements, and/or agreements were knowingly false and made to induce Plaintiff to accept and rely on such representations, statements, and/or agreements, and for Plaintiff to his interests, and/or funds to Cortland.

107.   Upon further information and belief, Cortland's conduct concerning the Buy-Out Agreement and overall arrangement with Plaintiffs were calculated to deceive and did in fact deceive Plaintiff.

108.   As also set forth above, to date, Cortland has refused and/or failed, among other things, to return Plaintiff's interests in BARM or to pay Plaintiff for same.

109.   As a direct result and proximate cause of Cortland's fraud, Plaintiff has been damaged in an amount to be determined at trial, but not less than $1,375,000.

### COUNT VI

### Breach of Fiduciary Duty

### -Against Defendants Jacob and Locke Law Firm -

110.   Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 109 above as if fully set forth herein.

111.   Defendants owed and currently owe, a fiduciary duty to the Plaintiff having been and acting as actual and de facto attorneys to Plaintiff.

112.   By reason of Defendants' fiduciary relationship, Defendants owed Plaintiff the highest obligations of good faith, fair dealing, loyalty and due care.

113.   Defendants breached their fiduciary duty to Plaintiff, *inter alia*, by engaging in conflicts of

interest and participating in a scheme to defraud Plaintiff.

114.   Defendants in fact represented all parties in this scheme both when advising and counseling Plaintiff and other victims about investing into the Original Ponzi scheme, and subsequently, *inter alia,* (i) forming and representing BRAM allegedly to recover and administer the victims' assets; (ii) establishing Belsky as the sole member of BARM and also representing Belskey; (iii) representing Cortland throughout its representation of BRAM and in inducing Plaintiff to forfeit its claim of $1,375,000 and shares to Cortland.

115.   Defendants' breach of their fiduciary duties has caused injury to Plaintiff.

116.   Due to the willful and wanton nature of Defendants' acts, which were conducted without regard to Plaintiff's rights, Plaintiff is entitled to punitive damages in an amount to be proven at trial.

## <u>COUNT VII</u>

### Breach of Duty to Act in Good Faith and Fair Dealing

### -   All Defendants -

117.   Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 116 above as if fully set forth herein.

118.   Each and all of the Defendants' have failed to act in good faith and fair dealing by *interlia* (i) failing to relinquish funds secured on behalf of Plaintiff, and (ii) their deliberate and furtive engagement in a conflicted matter.

119.   Plaintiff has demanded his share of funds as a victim of the Original Ponzi scheme, but Defendants have acted to wrongfully retain Plaintiff's funds and deliberately sought to obtain control of Plaintiff's claim..

120.   Defendants' bad faith and fraudulent dealings has caused Plaintiff direct and actual

damages, including tangible and non-tangible losses of not less than $1,375,000.

## COUNT VIII

### Accounting

### -Against All Defendants -

121.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 120 above as if fully set forth herein.

122.    Plaintiff as a victim of the Original Ponzi scheme for whose benefit BARM was allegedly established has the right to the books and records of BARM, including all financial information set forth therein, such as and certainly not limited to any funds received or disbursed in connection with the matter Defendants handled for Plaintiff through BARM.

123.    Defendants have kept Plaintiff in the dark on the financial and legal position of both him and BARM.

124.    That the cost of the continued failure of Defendants to disclose and afford Plaintiff full access to the books and records of BARM and the material necessary to make informed decisions has deprived Plaintiff of key knowledge and the financial recoveries.

125.    Defendants have the duty to account and has failed to do so and still has not rendered an accounting of the financial status of the operations of BARM in accordance with the Business Corporation Law.

126.    Plaintiff has suffered damage and will suffer further damage if Defendants persist in wrongful conduct set forth above.

127.    Plaintiff has no adequate remedy at law.

128.    Plaintiff is entitled to injunctive relief requiring Defendants to furnish Plaintiff with all books and records of BRAM and related to the recovery of funds and assets on behalf of

victims of the Original Ponzi scheme.

## COUNT IX

### Unjust Enrichment

### - All Defendants -

129.    Plaintiff repeats and realleges each and every allegation of the Complaint contained in Paragraphs 1 through 128 herein as if more fully set forth at length herein.

130.    For the reasons described herein, each of the Defendants unjustly enriched each of themselves by using funds recovered on behalf of victims of the Original Ponzi scheme for their own personal and respective benefit(s) and paying themselves distributions and other funds to the exclusion of Plaintiff.

131.    Defendants profited from Plaintiff's position and claim, including using Plaintiff's information and records to obtain access to and recovery of Plaintiff's funds, as well as leveraged Plaintiff's claims to recover funds of other victims of the Original Ponzi scheme, but Defendants willfully failed to distribute those amounts owed to Plaintiff and recovered on his behalf.

132.    After Defendants teetered with different positions, they ultimately denied Plaintiff any monies.

133.    Defendants' unjust enrichment was at the expense and detriment of Plaintiff, who has not received any monies from recovered on his behalf as a victim of the Original Ponzi scheme.

134.    Law and equity requires Defendants to pay Plaintiff all amounts recovered in connection with his claim amount, the principal sum of not less than $1,375,000.

135.    By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

## COUNT X

### Breach of Contract
### -Against Cortland-

(Pled in the Alternative)

136.   Plaintiff repeats and realleges each and every allegation of the Complaint contained in Paragraphs 1 through 135 herein as if more fully set forth at length herein.

137.   Plaintiff and Cortland entered into a certain Buy-Out Agreement pursuant to Cortland's representations and demands.

138.   Plaintiff performed as required by the terms of the Buy-Out Agreement.

139.   Cortland has breached the terms of the Buy-Out Agreement, insofar that it has failed to make any payment to Plaintiff for the interests acquired thereunder.

140.   As a result of the foregoing, Plaintiff has been damaged in an amount not less than $1,375,000.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury of all issues so triable that are raised herein or which hereinafter may be raised in this action

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.   Finding that all defendants are jointly and severally liable for all damage caused to Plaintiff;

2.  Awarding Plaintiff monetary damages in an amount not less than $1,375,000, said amount to be proven at trial;

3.  Awarding Plaintiff immediate access to books and records of BARM and monies recovered by Defendants on behalf of victims;

4.  Awarding Plaintiff enhanced (treble) monetary damages pursuant to 18 U.S.C. § 1964(c);

5.  Awarding Plaintiff its litigation expenses, including reasonable attorneys' fees, costs, and disbursements;

6.  Awarding Plaintiff exemplary punitive damages in the sum of not less than to be decided by a jury; and

7.  Granting such other relief as the case may require or as may be deemed proper and equitable.

Dated this 28th day of September 2022.

Respectfully submitted,

**GULKO SCHWED LLP**

*/s Asher Gulko*
525 Chestnut Street, Suite 207
Cedarhurst, New York 11516
T: 212.500.1312 / F: 212.678.0405
*Attorneys for Plaintiff*